Defendant-appellant Rodriquez Gibson appeals from his conviction for inciting to violence and aggravated rioting, raising six assignments of error. Because we hold that none of the assignments of error has merit, we affirm the judgment of the trial court.
Gibson claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[1] Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a conviction is a question of law.[2]
To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]
R.C. 2917.01, entitled "Inciting to violence," states in part:
 No person shall knowingly engage in conduct designed to urge or incite another to commit any offense of violence, when either of the following apply:
 (1) The conduct takes place under circumstances that create a clear and present danger that any offense of violence will be committed;
 (2) The conduct proximately results in the commission of any offense of violence.
R.C. 2917.02, in turn, defines aggravated riot as "participat[ing] with four or more others in a course of disorderly conduct * * * [w]ith purpose to commit or facilitate the commission of any offense of violence."
In this case, Gibson and three others were charged with inciting to violence and aggravated rioting relating to conduct that occurred on the date that Alonzo Davenport was to be buried. Davenport's death had been widely reported throughout Cincinnati because Davenport had committed suicide shortly after shooting and killing two Cincinnati police officers, Dan Pope and Ron Jeters. A crowd of at least one hundred persons gathered in the Over-the-Rhine area of Cincinnati after the funeral. The testimony adduced at trial by eyewitnesses was that people in the crowd were angry and were shouting, drinking and stopping passing cars. Several witnesses testified that people in the crowd were jumping on top of the cars.
Gibson was identified as one of the persons slapping the hoods of cars and waving his arms to other people to do the same. Gibson and a few others were observed standing in the middle of the street, leading a chant of "You got one, we got two," while bottles were thrown in the direction of police officers who had arrived to control the crowd.
Cincinnati Police Officer Thomas Canada testified at trial that he observed the crowd from a helicopter. Using a pair of binoculars, he was able to see individuals slapping the hoods of cars and waving other people into the street. He testified that one of these individuals was wearing a black shirt that had white lettering on it. He kept the suspect in his sights and instructed police officers on the ground where to locate him.
Officer Doug Weisman testified that he was the officer following the helicopter instructions and that he apprehended the person in the black shirt with white lettering. He identified that person at trial as Gibson. Officer Canada stated that he never lost sight of Gibson from the time he observed him jumping on cars to the time he was arrested. Other officers testified to seeing a man in a black shirt with white lettering waving his arms, leading the crowd into the street and slapping the hoods of cars, while bottles were being thrown in the direction of the officers.
We hold that this evidence, if believed, established all of the elements of the offenses charged. Moreover, after reviewing the entire record, we cannot say that the trier of fact lost its way in resolving conflicts in the evidence. We therefore overrule Gibson's first four assignments of error.
In his fifth assignment of error, Gibson contends that the trial court erred in refusing to admit evidence that Captain Streicher, one of the officers at the scene, had stated that he did not believe that the crowd was "anti-police." The trial court has discretion in admitting or excluding evidence, and, in this case, we cannot say that the trial court's decision to exclude the statement was an abuse of discretion.[4] Even if the statement were admissible as a statement of a party-opponent, as Gibson argues, it had no bearing on whether Gibson committed the acts with which he was charged.
The sixth assignment of error alleges that Gibson's jury waiver was not properly filed with the trial court. The record demonstrates that Gibson in fact signed a written jury waiver after being properly informed of his rights. Although the waiver was not formally "filed," i.e., "time-stamped," before the trial, the record shows that the waiver was time-stamped on December 10, 1998. Additionally, on November 12, 1998, the trial court, pursuant to App.R. 9(E), placed of record an entry including Gibson's jury waiver and further ordered that the jury waiver be made effective nunc pro tunc to the February 17, 1998, trial date. The signed, time-stamped jury waiver is part of the record that this court reviewed.
In State v. Pless,[5] the Ohio Supreme Court held that to effectuate a valid waiver of the right to trial by jury pursuant to R.C. 2945.05, strict compliance with the following provisions of the statute is mandated: the waiver form must be in writing, it must be signed by the defendant, and it must be filed in the criminal prosecution and made part of the record thereof. Absent strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.[6]
In State v. Gipson,[7] the Ohio Supreme Court further explained that the requirement in R.C. 2945.05 that the jury form be "filed in said cause and made part of the record thereof" means that the form must be time-stamped and included in the record.
This court addressed this issue in State v. Jones (Feb. 5, 1999), Hamilton App. No. C-980270, unreported, a companion case to this one. In Jones, this court reasoned that Pless, supra,
clearly emphasized the fact of filing rather than the date of filing in determining the validity of the waiver. As we held inJones, we hold in this case that for purposes of satisfying the requirements set forth in R.C. 2945.05, Gibson's jury-waiver form was properly "filed and made part of the record." Thus, the trial court had jurisdiction to try Gibson without a jury and to enter the subsequent judgment of conviction. The fifth assignment of error is accordingly overruled.
Therefore, the judgment of the trial court is affirmed. And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
DOAN, P.J., HILDEBRANDT and PAINTER, JJ.
To the Clerk:
Enter upon the Journal of the Court on February 5, 1999 per order of the Court ____________________. Presiding Judge
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720, cited with approval in State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.
[4] See State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343;Pembaur v. Leis (1982), 1 Ohio St.3d 89, 437 N.E.2d 1199.
[5] State v. Pless (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus.
[6] Id.
[7] State v. Gipson (1998), 80 Ohio St.3d 626, 687 N.E.2d 750.